# CHARLESTON

## Proudfoot *v.* Saffle.

Submitted January 15, 1907. Decided April 17, 1907.

1. Easements—*Ways of Necessity.*

 L. S. was the owner of a tract of 198 acres of land entirely surrounded by the lands of others and without access to a public road. L. S. purchased a tract of 80 acres adjoining and lying between the 198 acres tract and the public road and made a private way through the 80 acres to the public road, placing gates or bars to admit of passage through wherever it was necessary to build fences across said way. In a suit to enforce liens against the 198 acres the same was sold and a conveyance thereof made by special commissioner to the purchaser. Held: There was a way of necessity in favor of the purchaser through the 80 acres still remaining the property of L. S. (p. 54.)

2. Same—*Extinquishment.*

 A subsequent judicial sale of the 80 acres and conveyance thereof to the purchaser did not extinguish the said way of necessity. (p. 54.)

3. SAME.

    The way of necessity passes with each successive transfer of the title, whether voluntary or involuntary. (p, 54.)

4. SAME—*Duration.*

    A way having been created by necessity for its use cannot be extinguished so long as the necessity continues to exist. (p. 54.)

Appeal from Circuit Court, Barbour County.

Bill by Robert J. Proudfoot against Thomas L. Saffle. Decree for defendant, and plaintiff appeals.

*Reversed.*

FRED O. BLUE, for appellant.

W. T. GEORGE, for appellee.

McWHORTER, JUDGE:

This is a controversy over a private right of way or outlet claimed by the appellant Robert J. Proudfoot over or through a tract of 80 acres and 17 poles of land owned by the appellee Thomas L. Saffle in Barbour county. Appellant is the owner of a 198 acre tract lying away from the public road, the 80 acres, lying between the land of appellant and the public road—claiming that through the 80 acres is his only way out from his land and that he has a way through the 80 acres both as a "way of necessity" and by prescription. At the May term, 1904, Proudfoot filed his bill in equity in the circuit court of Barbour county praying an injunction to restrain Saffle from in any way obstructing his roadway or outlet through defendant's said tract of 80 acres of land or interfering with the peaceable enjoyment of the easement thereof by plaintiff and that the defendant be compelled to remove the obstruction which he had then placed or might thereafter place therein before the injunction should be awarded, and that defendant be required to restore to plaintiff the open roadway or outlet through said 80 acre tract to the public road, and for general relief. Accordingly an injunction was granted by said court on the 31st day of May, 1904. The defendant filed his answer denying all the material allegations of the bill affecting the right of plaintiff in said way by prescription, to which answer the plaintiff replied generally. Depositions were taken

and filed by both parties and the case was heard on the 22nd day of February, 1905, when the court dissolved the injunction and dismissed plaintiff's bill.

It appears from the record that Lewis Saffle was the owner of the said tract of 198 acres of land which was remote from the public road, that he purchased the tract of 80 acres on the 11th day of September, 1867, from Phillip Haddix and others through which he opened a private way from his 198 acres to the public road. Afterwards in a proceeding in chancery by Guggenheimer & Co. against the said Lewis Saffle and others to enforce liens against said lands of Lewis Saffle a decree was entered on the 26th of October, 1891, for the sale of said 198 acres and on the 1st day of March, 1882, the said tract was sold to Susan S. Saffle, the daughter of said Lewis Saffle, and by deed of special commissioner D. W. Gall, dated July 25, 1887, the said 198 acres was conveyed to said Susan S. Saffle. It further appears that afterwards, in another suit of J. N. B. Crim against Susan S. Saffle and others to sell the said 198 acres of Susan S. Saffle and the said 80 acres of the said Lewis Saffle, a decree was rendered on the 7th day of November, 1890, for the sale of said tract of 198 acres; that under said decree the said 198 acres was sold to John C. Felton and conveyed to him by special commissioner by deed of December 13, 1892; that afterwards on the 29th of March, 1893, the said John C. Felton and wife conveyed the said 198 acres to the plaintiff Robert J. Proudfoot who entered upon the possession thereof; that under said decree of November 7, 1890, the said 80 acre tract was sold and purchased by the defendant Thomas L. Saffle and conveyed to him by special commissioner Melville Peck by deed dated March 30, 1892, and joined in by Susan S. Bolyard late Saffle and John T. Bolyard, her husband, Salathiel Saffle, Emeretta Saffle, Malissa Miller late Saffle and James Miller her husband as parties of the first part.

Lewis Saffle was the owner of both the 198 acres and the 80 acres at the time of the first sale of the former under the decree of the court to Susan S. Saffle. It is not disputed that the 198 acres were surrounded on every side by the lands of others entirely cutting it off from communication with a public road excepting through the 80 acre tract.

This suit seems to have been prosecuted principally on the theory that plaintiff and those under whom he holds have acquired the right of way by prescription by continual and uninterrupted use for more than the prescriptive period, upon which the evidence is very conflicting and if the case depended on that issue alone the decree of the circuit court would have to be affirmed; but in our view of the case that is immaterial as the real issue is, has the plaintiff a way of necessity. A way of necessity is not established by the mere fact that one's land is surrounded by the lands of others cutting him off from public ways. "When there is a conveyance of a tract of land and there is not means of access thereto or egress therefrom except over the remaining land of the grantor a way of necessity over such land is granted by implication of law, whether the transfer be voluntary or by sale under execution." 14 Cyc. 1174. In *Boyd* v. *Woolwine*, 40 W. Va. 282, Syl. Point 2, it is held: "When a man grants land to another in the middle of land retained, he impliedly gives the grantee a way to come at it, across the land retained. This is an instance of what is called 'a way of necessity.'" In *Blum* v. *Weston*, 102 Cal. 362, 41 Am. St. 188, 36 Pac. 778, it is held: "The right of way of necessity passes with each successive transfer of the title, whether voluntary or involuntary." It is there further held: "A way having been created by necessity for its use cannot be extinguished so long as the necessity continues to exist." And further: "A right of way of necessity cannot be denied on the ground that such a way could be procured by condemnation under the statute." And in *Taylor* v. *Townsend*, 8 Mass. 411, 5 Am. Dec. 107, it is held: "When land of a debtor is set off on execution to which no access can be had, except over other lands of the debtor, the creditor may have set off to him a right of passage over such other lands either separately or jointly with the debtor." See also *Pernam* v. *Wead*, 2 Mass. 203, 3 Am. Dec. 43. In *Rogerson* v. *Shepherd*, 33 W. Va. 307, 10 S. E. 632: "Where a party sells two adjoining tracts of land from one of which there is access to a public highway only by passing over the other, that fact creates a right of way of necessity." And in *Woolridge* v. *Coughlin*, 46 W. Va. 345, it is held: "A way of necessity exists where

land granted is completely environed by land of the grantor, or partially by his land and the land of strangers.    The law implies from these facts that a private right of way over the grantor's lands was granted to the grantee as appurtenant to the estate." So in *Elliott* v. *Rhett*, 57 Am. Dec. 750 (So. Car. 5 Richardson's Law, 405): "Grant of continuous and apparent easement is implied on severance of heritage where, though having no legal existence as easements, they have in fact been used by the owner during the unity of the heritage, or where they are necessary to the full enjoyment of the several portions of the heritage." A note at the end of the last cited case at page 759 et seq., 57 Am. Dec., very well discusses this matter of continuance of easements on severance of heritage as between parts thereof.    *Sanderlin* v. *Baxter*, 76 Va. 299; *Cannon* v. *Boyd*, 73 Pa. 179; *Warren* v. *Syme*, 7 W. Va. 476.

In case at bar the original owner of the 198 acres, Lewis Saffle, found himself hemmed in on all sides by the lands of others and to relieve himself he purchased the 80 acres through which he opened a private way to the public highway, placing bars or gates, through which passage could be conveniently had, at all places on the said 80 acres where it became necessary to build fences across said way or outlet. When the sale of his 198 acres took place it carried with it a way of necessity from the part sold to the public road, and the purchaser became entitled to the use of such private way and the defendant could not so obstruct the same by planting posts in the way and fastening gates and bars so they could not be used conveniently by opening and closing for passage through the same by the plaintiff.

For the reasons herein given the decree of the circuit court dissolving the injunction and dismissing plaintiff's bill must be reversed and the injunction will be perpetuated.

*Reversed.*